# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 20-20062-CIV-ALTONAGA/Goodman

**EASYGROUP LTD.,**

     Plaintiff,

v.

**SKYSCANNER, INC.**; *et al.*,

     Defendants.

_____/

### <u>ORDER</u>

**THIS CAUSE** came before the Court on Defendants, Empresa Aerea de Servicios y Facilitacion Logistica Integral, S.A. ("Easyfly") and Alfonso Avila Velandia's ("Avila['s]"; collectively, the "Defendants[']") Motion to Dismiss Plaintiff's Amended Complaint for Lack of Personal Jurisdiction [ECF No. 85], filed on July 16, 2020. Plaintiff, easyGroup Ltd., filed a Response in Opposition [ECF No. 87] on July 30, 2020; to which Defendants filed a Reply [ECF No. 95] on August 6, 2020. The Court has carefully considered the First Amended Complaint ("Amended Complaint") [ECF No. 79], the parties' written submissions, and applicable law. For the following reasons, the Motion is granted in part and denied in part.

## I.     BACKGROUND

This action involves a trademark dispute between Plaintiff and Defendants. (*See generally* Am. Compl.). Plaintiff is a corporation formed under the laws of the United Kingdom. (*See id.* ¶¶ 2, 11). Defendant, Easyfly, is a Colombian corporation with its principal place of business in Bogota, Colombia. (*See id.* ¶ 6). Defendant, Avila, is a resident of Colombia. (*See id.* ¶ 7). The

non-moving Defendants, Skyscanner, Inc. ("Skyscanner"),[1] Kayak Software Corporation ("Kayak"), and Kiwi.com, Inc. ("Kiwi"), are Delaware corporations conducting business in Florida. (*See id.* ¶¶ 3–5).

***Plaintiff's Trademarks***.  Plaintiff owns numerous trademark registrations worldwide beginning with the prefix "easy" for a variety of goods and services. (*Id.* ¶ 12 (quotation marks omitted)).  Plaintiff owns 21 federal trademark registrations in the United States. (*See id.* ¶ 13). Plaintiff and its licensees "spend hundreds of thousands of dollars every year promoting the 'easy' trademarks and building [Plaintiff's] goodwill in the marks." (*Id.* ¶ 17 (alteration added)). Plaintiff's trademark registrations include EASYJET,[2] easy, and EASYFLY (collectively, the "Easy Marks"). (*See id.* ¶ 16).

Plaintiff uses the Easy Marks for air-travel-related services and enjoys a strong reputation, due, in part, to its brand and airline "easyJet[.]" (*Id.* ¶ 19 (alteration added; quotation marks omitted)).  EasyJet is one of the largest and most well-known airlines in the world, operating in over 30 countries and carrying approximately 100 million passengers a year. (*See id.*).  The easyJet website receives 200 million customer visits a year. (*See id.*).

***Plaintiff's Allegations***.  Defendant Easyfly is an airline established in 2006. (*See id.* ¶ 21). Avila, who has several years of airline-industry experience, is one of the original founders of Easyfly and is currently one of its three shareholders. (*See id.* ¶¶ 22, 24–25).  Avila "named [the] airline Easyfly with the intent of copying [Plaintiff's] highly successful 'easy' family of marks in general and EASYJET in particular." (*Id.* ¶ 26 (alterations added)).

---

[1] Plaintiff and Skyscanner stipulated to the dismissal of all claims asserted against Skyscanner. (*See generally* Stip. of Dismissal with Prej. [ECF No. 97]).

[2] Unless otherwise noted, quotations and references to Plaintiff's and Easyfly's trademarks in their written submissions keep the original capitalization.

Avila is Easyfly's president and central decision maker.  (*See id.* ¶ 7).  Avila's active role includes: (1) representing Easyfly before its shareholders, authorities, and third parties; (2) executing contracts and acts on behalf of Easyfly and its operations, including making significant financial decisions for the company; (3) defining, adjusting, or terminating positions, departments, and committees deemed necessary for Easyfly's operations; (4) ensuring compliance with Easyfly's management systems; (5) defining policies, projections, and strategic guidelines for Easyfly; and (6) complying with and enforcing the legal requirements, operations, and activities of the airline.  (*See id.* ¶ 27).

Until recently, Easyfly operated routes exclusively in Colombia.  (*See id.* ¶ 28).  Avila is exploring markets outside of Colombia.  (*See id.* ¶¶ 27–28).  To further expand its business, Easyfly markets and/or sells tickets on branded planes to Peru, Ecuador, and Panama.  (*See id.* ¶ 28).  Easyfly sells tickets through various means, including its website.  (*See id.* ¶ 29).

Easyfly's website is accessible from anywhere in the world and has been significantly accessed in the United States — and specifically, Florida.  (*See id.*).  The website purports to sell tickets only in Colombia but accepts purchases from the United States.  (*See id.* ¶ 37).  Easyfly uses Plaintiff's EASYFLY marks on its website.  (*See id.* ¶ 38).  Easyfly's website requires Colombian identification but ignores fake numbers and accepts orders from U.S. customers.  (*See id.* ¶ 39).  The United States "constitutes as [sic] country of origin for almost fifty percent of all clicks to Easyfly's website and accounts for the second largest source of income from online purchases with significant sales purportedly coming from the United States, including Florida."  (*Id.* ¶ 40; *see also id.* ¶ 29).  Easyfly also identifies its service using an EF mark.  (*See id.* ¶ 41).

Easyfly's representatives have traveled numerous times to the United States for business related to Easyfly, including to Florida, Arizona, and New York.  (*See id.* ¶ 30).  By way of

example, from 2006 to 2017, Avila traveled consistently every three months to New York to meet with a former Easyfly shareholder to discuss business. (*See id.* ¶ 34). This business-related travel includes trips to Miami, Florida for the promotion, maintenance, development, and/or advertising of travel services. (*See id.* ¶ 30). Even as recently as 2019, Avila met with Intrepid Aircraft Maintenance, LLC's representatives in Miami to discuss business. (*See id.*). Avila's "continuous contacts with the U.S. have taken him to Florida on several occasions for business related to Easyfly[,]" during which Avila shopped for airplane parts and visited Avions de Transport Regional GIE's training facility. (*Id.* ¶ 34 (alteration added)).

Easyfly's only training center for its airplanes in the entire western hemisphere is in Miami, Florida. (*See id.* ¶ 31). Its pilots wear branded uniforms when they train at this center. (*See id.*). Easyfly obtains a large portion of its supplies and parts for its airplanes in the United States. (*See id.*). Easyfly's airplane parts are repaired in Miami, and it receives shipments of supplies for its airplanes from various U.S. entities. (*See id.*).

Easyfly maintains a bank account at the Miami branch of Bank of Bogota, through which Easyfly pays its suppliers in connection with business and all U.S. invoices. (*See id.* ¶ 32). The Miami bank is the only bank used by Easyfly outside of Colombia. (*See id.*). Avila has signing control over Easyfly's business bank account. (*See id.* ¶ 35). Moreover, Easyfly has availed itself of and initiated legal action before the courts of the United States, particularly the Southern District of Florida. (*See id.* ¶ 33); *see also Empresa Aerea de Servicios y Facilitacion Logistica Integral, S.A. v. Black Lion Aviation Corp.*, No. 10-cv-60112, Compl. [ECF No. 1] (S.D. Fla. Jan. 25, 2010).

Avila personally owns a condominium in Miami-Dade County, Florida. (*See* Am. Compl. ¶ 35). He spends time in Florida on pleasure trips and travels at least once a year to his vacation

residence in Aventura, Florida.  (*See id.*).  Avila has personal bank accounts in Florida at First Bank, where he maintains both a checking and savings account.  (*See id.*).

Kayak and Skyscanner promote travel fares and direct consumers to ticket vendors.  (*See id.* ¶ 42).  Kiwi is an online ticket reseller that (directly or indirectly) sells tickets to customers forwarded by Kayak.  (*See id.* ¶ 44).  These parties "use marks which are infringing in the United States to drive traffic to foreign carriers[.]"  (*Id.* ¶ 46 (alteration added); *see also id.* ¶¶ 45, 47–52).

Easyfly benefits from the infringing activities of these online consolidators who are selling tickets on the Easyfly airline while using the counterfeit EASYFLY trademarks in the United States.  (*See id.* ¶ 53).  Easyfly "even issued 'Black Friday' specific promotions with the apparent intent of luring United States customers through the consolidator sites or through direct purchase on the [Easyfly] airline's Colombian website."  (*Id.* ¶ 54 (alteration added); *see also id.*, Ex. F, Black Friday Advertisement [ECF No. 79-6] 2).[3]

"Defendants' EASYFLY mark is a counterfeit of [Plaintiff's] EASYFLY registered mark and is an infringement of [Plaintiff's] other registered marks such as [easy] and EASYJET."  (*Id.* ¶ 67 (alterations added)).  By using the EASYFLY mark in the United States, Defendants are causing irreparable harm to the Easy Marks as well as to the entire "easy" family of marks.  (*Id.* ¶ 68 (quotation marks omitted)).  Defendants' use of the Easy Marks undermines Plaintiff's goodwill and consumers' trust in Plaintiff's services and marks.  (*See id.* ¶ 69; *see also id.* ¶ 70).

***The Amended Complaint***.  Plaintiff brings four claims against Defendants: Infringement and Counterfeiting of Federally Registered Trademark in violation of the Lanham Act, 15 U.S.C. section 1114, *et seq.* (Count II) (*see* Am. Compl. ¶¶ 82–91); Federal Unfair Competition and False

---

[3] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings. Citations to deposition testimony rely on the pagination and line numbering in the original document.

Designation of Origin in violation of section 43(a) of the Lanham Act, 15 U.S.C. section 1125(a) (Count III) (*see* Am. Compl. ¶¶ 92–102); Trademark Dilution in violation of 15 U.S.C. section 1125(c) (Count IV) (*see* Am. Compl. ¶¶ 103–12); and Common Law Unfair Competition (Count V) (*see id.* ¶¶ 113–22).

***Defendants' Motion and Additional Facts***.   Defendants move for dismissal of the Amended Complaint based on lack of personal jurisdiction, contending a court in Florida does not have general jurisdiction over them, and that what limited contacts they have with this forum are not sufficiently related to Plaintiff's claims to confer specific jurisdiction.  (*See generally* Mot.; Reply).  Defendants submit affidavits, deposition transcripts, and other evidence focusing on their lack of contacts with the United States — and Florida — and supplying additional facts for the Court to consider in determining whether general or specific jurisdiction exists over Defendants. (*See generally* Mot., Ex[s]. A–M [ECF Nos. 85-1–85-13]; Reply, Ex[s]. N–P [ECF Nos. 95-1–95-3]).

Avila, Easyfly's president, is a Colombian citizen residing in Bogota, Colombia.  (*See* Mot., Ex. A, Avila Decl. [ECF No. 85-1] ¶ 5).  Easyfly, a regional passenger airline, is a Colombian corporation with its principal place of business in Bogota, Colombia.  (*See id.* ¶¶ 6, 9).

Easyfly has always conducted business entirely within Colombia.  (*See id.* ¶ 7; *see also id.* ¶¶ 8–11).  It neither transports passengers nor conducts operations outside of Colombia.  (*See id.* ¶ 12).  Easyfly "has never flown passengers, nor has it ever conducted any flight operations, nor has it ever flown any of its aircraft for training purposes, outside the territory of Colombia."  (*Id.* ¶ 13).  Easyfly does not presently intend to expand outside of Colombia.  (*See id.* ¶ 14).

Easyfly employs approximately 1,300 people, all of whom are based in Colombia.  (*See id.* ¶ 15).  Easyfly has no officers, employees, agents, or representatives who reside or perform official

duties in Florida or the United States. (*See id.*). It does not maintain a phone number in Florida; nor does it have any addresses, licenses, liens, or real property in Florida or the United States. (*See id.* ¶ 17). Easyfly does not advertise or market its services in Florida or the United States; nor has it targeted or directed any marketing campaigns or materials to residents of Florida or the United States. (*See id.* ¶ 16).

Easyfly's EASYFLY mark is derived from an acronym of the full legal name of the airline: "**E**mpresa **A**érea de **S**ervicios **Y F**acilitación **L**ogística **I**ntegral." (*Id.* ¶ 19 (bold in original)). Since 2007, Easyfly has used the trademark EASYFLY in Colombia to identify its products and services to Colombian customers. (*See id.* ¶ 18; *see also id.* ¶ 21). In 2009, Easyfly secured additional Colombian trademark registrations for its trademarks, including EASYFLY.COM.CO and stylized representations of the EASYFLY mark. (*See id.* ¶¶ 21–24). According to Avila, "none of [Easyfly's] aircraft bearing the EASYFLY mark have ever landed in the United States or in Florida for any reason whatsoever, even for maintenance, training, or in transit to Colombia or any other country." (*Id.* ¶ 20 (alteration added)).

Easyfly has no agreements, understandings, or any type of relationship, commercial or otherwise, with Skyscanner, Kayak, or Kiwi. (*See id.* ¶ 29). Easyfly has neither requested nor authorized these parties to market, advertise, promote, display, publicize, or otherwise commercialize the EASYFLY mark or Easyfly's goods or services. (*See id.* ¶ 30). In fact, when Easyfly learns third parties attempt "to market, advertise, promote, display, publicize, or otherwise commercialize any of [Easyfly's] marks outside of the territories where [Easyfly] owns trademark registrations, [Easyfly] has demanded that such third parties refrain from any kind of advertising, promotion, or marketing of [Easyfly], its services, or its trademarks." (*Id.* ¶ 31 (alterations added)).

Avila is Easyfly's president and plays an active role in the management of the airline.  (*See id.* ¶ 25).  Due to the size of the company, however, Avila is not (and cannot be) responsible for all aspects of Easyfly's operation.  (*See id.*).  Avila is not responsible for Easyfly's marketing activities, which are carried out by the marketing and sales teams.  (*See id.*).  Avila is not a member of the marketing and sales teams.  (*See id.*).  These teams "are responsible for [Easyfly's] website, social media presence and campaigns, preparation and dissemination of marketing campaigns and materials, [Easyfly's] corporate image, and [Easyfly's] advertisements."  (*Id.* ¶ 26 (alterations added)).

## II.     STANDARD

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a claim against it by asserting the defense of lack of personal jurisdiction.  Because "[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons[,]" *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (alterations added; citing Fed. R. Civ. P. 4(k)(1)(A)), a federal court sitting in Florida may properly exercise personal jurisdiction only if the requirements of (1) Florida's long-arm statute and (2) the Due Process Clause of the Fourteenth Amendment to the United States Constitution are both satisfied, *see Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999) (citing *Sculptchair, Inc. v. Century Arts Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996)).

"There are two types of personal jurisdiction: specific and general."  *Madara v. Hall*, 916 F.2d 1510, 1516 n.7 (11th Cir. 1990).  "General personal jurisdiction is based on a defendant's substantial activity in [a state] without regard to where the cause of action arose[,]" whereas "specific personal jurisdiction authorizes jurisdiction over causes of action arising from or related

to the defendant's actions within [a state.]" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013) (alterations added; citations omitted).

"A plaintiff seeking to obtain jurisdiction over a non-resident defendant initially need only allege sufficient facts to make out a prima face case of jurisdiction." *Posner*, 178 F.3d at 1214 (citing *Electro Eng'g Prods. Co. v. Lewis*, 352 So. 2d 862, 864 (Fla. 1977)). "The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." *Peruyero v. Airbus S.A.S.*, 83 F. Supp. 3d 1283, 1286 (S.D. Fla. 2014) (citing *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000)).

If a plaintiff pleads sufficient facts to support the exercise of personal jurisdiction, the burden shifts to the defendant to make a *prima facie* showing of the inapplicability of the state's long-arm statute. *See Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000) (citation omitted). To the extent the defendant's proffered evidence does not contradict the plaintiff's jurisdictional allegations, the plaintiff's allegations must be accepted as true. *See Posner*, 178 F.3d at 1215 (citing *Madara*, 916 F.2d at 1514). But where the defendant does contradict the plaintiff's allegations, the burden shifts back to the plaintiff, this time requiring the plaintiff to prove — not merely allege — jurisdiction by affidavits, testimony, or other documents. *See id.* at 1214–15; *Future Tech.*, 218 F.3d at 1249 (citation omitted).

A party cannot meet its evidentiary burden by submitting affidavits asserting only "conclusory assertions of ultimate fact[.]" *Posner*, 178 F.3d at 1215 (alteration added). Rather, the affidavits must "set forth specific factual declarations within the affiant's personal knowledge." *Id.* "The district court must construe all reasonable inferences in the light most favorable to the plaintiff when dealing with conflicting evidence." *Peruyero*, 83 F. Supp. 3d at 1287 (citing *PVC*

*Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 810 (11th Cir. 2010); other citation omitted).

## III.   ANALYSIS

Defendants assert the Court cannot exercise personal jurisdiction over them. (*See generally* Mot.; Reply).  According to Defendants, Easyfly and Avila both lack sufficient contacts with the State of Florida to give rise to either general or specific jurisdiction. (*See* Mot. 5–21).  The Court first considers whether personal jurisdiction exists over Easyfly and then turns to Avila.[4]

### A. Easyfly

Plaintiff claims the Court has personal jurisdiction over Easyfly under sections 48.193(1)(a)(2), (2) and Federal Rule of Civil Procedure 4(k)(2). (*See* Resp. 10–21).  As discussed, the Court considers two questions when asked to exercise jurisdiction over a nonresident defendant: "(1) whether personal jurisdiction exists over the nonresident defendant [] under Florida's long-arm statute, and (2) if so, whether that exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution." *Mosseri*, 736 F.3d at 1350 (alteration added; citation omitted).  The Court addresses Florida's long-arm statute and the Due Process Clause in turn.

***Florida's Long-Arm Statute***.  Florida's long-arm statute recognizes two kinds of personal jurisdiction over a nonresident defendant: specific jurisdiction and general jurisdiction. *See* Fla. Stat. §§ 48.193(1)–(2).  Because Plaintiff satisfies the long-arm statute's requirements for specific

---

[4] The Court analyzes Plaintiff's causes of action simultaneously, as each cause of action sounds in tort and all claims relate to the same conduct Defendants allegedly engaged in. *See Macrotrend Cap. Grp. Inc. v. Edwards*, No. 18-cv-61327, 2019 WL 2106421, at *4 (S.D. Fla. Mar. 4, 2019) (analyzing the tort claims simultaneously because the plaintiffs' causes of action sounded in tort and all related to the same act allegedly committed by the defendant).

jurisdiction over Easyfly, there is no need to engage in the general jurisdiction analysis.[5]  *See Landmark Bank, N.A. v. Cmty. Choice Fin., Inc.*, No. 17-60974-Civ, 2017 WL 4310754, at *12 (S.D. Fla. Sept. 28, 2017).

Under Florida's long-arm statute, a court may exercise specific personal jurisdiction over a nonresident defendant who engaged in one of the enumerated acts listed under section 48.193(1)(a).  *See Wolf v. Celebrity Cruises, Inc.*, 683 F. App'x 786, 790 (11th Cir. 2017) (citing *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203–04 (11th Cir. 2015)).  The scope of Florida's long-arm statute is a question of Florida law.  *See Madara*, 916 F.2d at 1514.  Moreover, "Florida's long-arm statute is to be strictly construed."  *Sculptchair, Inc*, 94 F.3d at 627 (citation omitted).

Section 48.193(1)(a)(2) states a nonresident defendant may be subject to the jurisdiction of a court in Florida "for any cause of action arising from . . . [c]ommitting a tortious act within this state."  Fla. Stat. § 48.193(1)(a)(2) (alterations added).  Plaintiff contends Easyfly has submitted to Florida's specific jurisdiction by committing tortious acts within the state.  (*See* Resp. 10–13; *see also* Am. Compl. ¶¶ 29, 37–40).

"Under the committing a tortious act prong, a court may assert jurisdiction over a nonresident defendant who commits a tort outside of the state that causes injury inside the state, meaning the defendant's physical presence is not required if the tort causes an injury in Florida."  *Sutherland v. SATO Glob. Sols., Inc.*, No. 17-cv-61596, 2018 WL 3109627, at *5 (S.D. Fla. Apr. 10, 2018) (alteration adopted; quotation marks and citation omitted).  "It is well settled in the Eleventh Circuit that trademark claims under the Lanham Act allege tortious acts for long-arm

---

[5] Likewise, "[b]ecause jurisdiction [] is satisfied under Florida's long-arm statute, the Court need not reach the question of federal long-arm jurisdiction allowed under Federal Rule[] of Civil Procedure 4(k)(2)." *KMG Int'l, BV v. Fun Light Amusements, SRO*, No. 8:19-cv-00333, 2019 WL 3343662, at *3 n.1 (M.D. Fla. July 25, 2019) (alterations added; citation omitted).

CASE NO. 20-20062-CIV-ALTONAGA/Goodman

purposes[.]" *PG Creative Inc. v. Affirm Agency, LLC*, No. 18-cv-24299, 2019 WL 5684219, at \*4 (S.D. Fla. Oct. 31, 2019) (alteration added; citation omitted); *see also Hard Candy, LLC v. Hard Candy Fitness, LLC*, 106 F. Supp. 3d 1231, 1239 (S.D. Fla. 2015) (recognizing trademark infringement under 15 U.S.C. section 1114, false designation of origin under 15 U.S.C. section 1125(a), trademark dilution under 15 U.S.C. section 1125(c), and common law unfair competition involve "tortious acts" under the long-arm statute (quotation marks omitted; collecting cases)).

Plaintiff alleges (1) "Easyfly sells tickets through various means, including its website which is accessible from anywhere in the world[,]" including Florida; (2) Easyfly uses the infringing EASYFLY trademarks on its website; and (3) the United States "constitutes as [sic] country of origin for almost fifty percent of all clicks to Easyfly's website and accounts for the second largest source of income from online purchases with significant sales purportedly coming from the United States, including Florida." (Am. Compl. ¶¶ 29, 37–40 (alteration added)). Easyfly insists these allegations are insufficient for Plaintiff "to meet its burden of establishing specific jurisdiction under Florida's long-arm statute[,]" as "no injury occurred in this state and Plaintiff has pled no basis for the underlying tort upon which jurisdiction is premised[.]" (Reply 5 (alterations added)).[6]  The Court disagrees.

Fortunately, the Eleventh Circuit has weighed in on the reach of section 48.193(1)(a)(2) in suits involving trademark infringement, nonresident defendants, and publicly-accessible websites.

---

[6] In its Motion, Easyfly advances numerous arguments highlighting its seemingly minimal contacts with the United States and Florida. Easyfly, however, neither specifically discusses the enumerated acts listed under Florida Statute section 48.193(1)(a) nor cites any authority supporting the proposition it did not commit a tortious act within the state for purposes of the long-arm statute. (*See* Mot. 6–11). Easyfly's specific jurisdiction arguments are thus largely irrelevant to the Court's discussion of section 48.193(1)(a)(2). By way of example, Easyfly expends considerable effort discussing its lack of business contacts and activities in Florida (*see* Mot. 1–3, 5–10); yet, "a defendant cannot defeat personal jurisdiction based on tortious conduct by filing an affidavit that attests that the defendant has not conducted business in Florida and does not have any business contacts in the State." *Elite Flower Servs., Inc. v. Elite Floral & Produce, LLC*, No. 13-cv-21212, 2013 WL 12095134, at \*3 (S.D. Fla. June 18, 2013) (citations omitted).

In *Licciardello v. Lovelady*, 544 F.3d 1280 (11th Cir. 2008), the plaintiff asserted trademark infringement claims relating to defendant's unauthorized use of the plaintiff's trademarked name, photograph, and apparent endorsement of the defendant on a website "accessible to the public in Florida[.]" *Id.* at 1282 (alteration added). The defendant lived in Tennessee and created the website in Tennessee. *See id.* at 1282–83. The Eleventh Circuit concluded the plaintiff's allegations satisfied section 48.193(1)(a)(2)'s requirements for specific jurisdiction. *See id.* 1283–84. The court reasoned: "We need not decide whether trademark injury necessarily occurs where the owner of the mark resides, as the Florida district courts have held, because in this case the alleged infringement clearly also occurred in Florida by virtue of the website's accessibility in Florida." *Id.* at 1283 (footnote call number omitted). Said differently, "under the 'tortious acts' provision in [section] 48.193(1)(a)(2), a trademark infringement on an Internet website causes injury and occurs in Florida 'by virtue of the website's accessibility in Florida.'" *Mosseri*, 736 F.3d at 1353–54 (alteration added; quoting *Lovelady*, 544 F.3d at 1283).

*Mosseri*, 736 F.3d 1339, is instructive. In *Mosseri*, the plaintiff asserted trademark infringement claims against the nonresident defendant. *See id.* at 1343. As to personal jurisdiction, the plaintiff alleged the following tortious acts: (1) the defendant's "operation of fully-interactive Internet websites on which Florida customers could view, buy, and pay for products bearing counterfeits of the [plaintiff's] trademarks"; and (2) the defendant sold and shipped counterfeit goods into Florida. *Id.* at 1348 (alteration added; quotation marks omitted). Applying *Lovelady*, the court first reaffirmed that the defendant's "trademark infringement caused injury and thus occurred in Florida by virtue of the website's accessibility in Florida." *Id.* at 1354 (quotation marks and citation omitted). The court then went on to discuss "other tortious acts within Florida" — namely, the defendant's sales on the Internet of infringing products to Florida consumers. *Id.*

The court found the exercise of specific personal jurisdiction appropriate because the "trademark infringing goods were not only accessible on the website, but were sold to Florida customers through that website." *Id.*

Plaintiff's allegations of Easyfly's trademark infringement via a Florida-accessible website and significant ticket sales through use of the infringing trademarks to Florida customers satisfy section 48.193(1)(a)(2)'s requirements for specific personal jurisdiction over Easyfly.[7]  (*See* Am. Compl. ¶¶ 29, 37–40).  This conclusion is consistent with the Eleventh Circuit's decisions in *Lovelady* and *Mosseri*.[8]  *See also Dohler S.A. v. Guru*, No. 16-23137-Civ, 2017 WL 4621098, at *5 (S.D. Fla. Oct. 16, 2017) (finding the plaintiffs satisfied the long-arm statute where they alleged the defendants sold counterfeit products by virtue of a website accessible in Florida); *Kumbrink v. Hygenic Corp.*, No. 15-Civ-23530, 2016 WL 5369334, at *2 (S.D. Fla. Sept. 26, 2016) ("[The

---

[7] In addition to those allegations, Plaintiff cites to Easyfly's own Google Analytics Reports showing the significant access of Easyfly's website by users in the United States, including Florida, and detailing the number of ticket sales to U.S. and Florida customers. (*See* Resp. 5; *see also* Not. of Filing . . . ("Not. of Filing") [ECF No. 93], Ex[s]. E–F [ECF Nos. 93-1, 93-2]).  By way of example, Plaintiff emphasizes the fact Easyfly "sold 17,745 tickets to U.S. customers from May 15, 2015 to May 14, 2020 at a significant total cost[,]" most of which "were sold to consumers in Florida (5,355 of 17,745 tickets)."  (Resp. 5 (alteration added; emphasis omitted); *see also generally* Not. of Filing, Ex[s]. E–F).

Undeterred, Easyfly contends its website was visited by an "internet bot or web crawler" (Mot. 9) and that Plaintiff has "offered no evidence that those individuals actually were in Florida" (Reply 4).  (*See also* Mot. 9 (citing Mot., Ex. G, Herrera Dep. Tr. [ECF No. 85-7] 85:12–16 (stating deponent does not know if the users are living, dead, or if they are robots)); *but see* Not. of Filing Redacted Versions . . . [ECF No. 90], Ex. H, Herrera Dep. Tr. [ECF No. 90-2] 88:9–21 (admitting robots do not generate ticket sales and that deponent is not an Internet expert)).  Easyfly's cited testimony and vague attorney assertions do not militate against exercising jurisdiction under section 48.193(1)(a)(2).  Indeed, Easyfly offers no meaningful rebuttal that its website not only was accessible in Florida, but also was used by Florida customers to purchase airline tickets bearing the allegedly infringing marks.  (*See* Resp. 12–13); *see also Mosseri*, 736 F.3d at 1354.

[8] In a cursory and unpersuasive footnote, Easyfly contends *Lovelady* and *Mosseri* are inapposite because the plaintiffs in those cases were either Florida residents or Florida-retail-outlet operators.  (*See* Reply 3 n.1).  Easyfly offers no authority supporting the proposition *Lovelady* and *Mosseri* apply only to Florida residents and retail-outlet owners — in fact, Easyfly's specific jurisdiction contentions do not cite *any* authority supporting Easyfly's tenuous position section 48.193(1)(a)(2) is not satisfied.  (*See* Reply 3–4; Mot. 6–11).

14

defendant's] website was not only accessible in Florida, but Florida residents were able to purchase the alleged infringing product on it.  Therefore, [the defendant's] alleged tort caused injury inside Florida, and this Court has long-arm jurisdiction pursuant to Fl[orida] Stat[ute] [section] 48.193(1)(a)(2)." (alterations added; citation omitted)); *Evans v. Andy & Evan Indus., Inc.*, No. 15-cv-61013, 2016 WL 8787062, at *3 (S.D. Fla. July 15, 2016) (agreeing with the plaintiffs that accessibility in Florida of the defendant's website featuring infringing products constituted a tortious act causing injury in Florida); *Cross Match Techs., Inc. v. Crossresolve, LLC*, No. 15-81310-Civ, 2016 WL 3216541, at *4 (S.D. Fla. June 10, 2016) ("Because [the plaintiff] establishes that [the defendant] maintains a website accessible in Florida that displays the allegedly infringing mark, [the plaintiff] makes out a *prima facie* case of personal jurisdiction under the long-arm statute." (alterations added; citations omitted)).

Easyfly raises numerous arguments in its Reply, none of which is availing or supported by any controlling (or persuasive) authority.  (*See* Reply 3–5).  The Court explains.

Easyfly contends Florida and U.S. ticket sales "represent less than 0.1% and 0.3% respectively[] of total sales" and such "minimal sales . . . [are] insufficient to establish any injury in Florida."  (*Id.* 4 (alterations added)).  Easyfly's contentions miss the mark.  "The 'percentage of overall revenue gleaned from Florida clients' is relevant to an analysis under Florida Statute section 48.193(1)(a)(1) (providing for specific personal jurisdiction where a cause of action arises from a defendant's operation of a business or business venture in the state), not the subsection at issue, (1)(a)(2)."[9]  *Am. Airlines, Inc. v. Despegar.com USA, Inc.*, No. 13-22773-Civ, 2014 WL

---

[9] Tellingly, *Carmel and Co v. Silverfish, LLC*, No. 1:12-cv-21328, 2013 WL 1177857 (S.D. Fla. Mar. 21, 2013), on which Easyfly relies, discusses the percentage of the defendant's sales in the context of the "conducting business" prong under section 48.193(1)(a)(1), not the "tortious act" prong of section 48.193(1)(a)(2).  *Id.* at *3–4 (quotation marks omitted); (*see also* Reply 4).

11880999, at *6 (S.D. Fla. May 14, 2014) (quoting *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005)).

Easyfly next argues "it is not possible for [Easyfly's] alleged actions to cause an injury" in Florida because "Plaintiff does not have any presence in Florida[.]" (Reply 4 (alterations added)). Easyfly's argument, however, ignores *Lovelady* and *Mosseri*. *See Lovelady*, 544 F.3d at 1283 (stating trademark infringement on a website causes injury in Florida "*by virtue of the website's accessibility in Florida.*" (emphasis added; footnote call number omitted)); *Mosseri*, 736 F.3d at 1354 (concluding the defendant's "tortious acts . . . *caused injury in Florida* and thus occurred there *because* [*the defendant's*] *trademark infringing goods were not only accessible on the website, but were sold to Florida customers through that website.*" (alterations and emphasis added)).

Easyfly further asserts Plaintiff fails to "recite the necessary elements" of its tort claims and insists "no tort of infringement [] occurred within this state." (Reply 4 (alteration added)). Easyfly is mistaken for two reasons.

First, Plaintiff pleads the essential elements of its claims against Easyfly and, as discussed, alleges enough facts to support personal jurisdiction under the long-arm statute. (*Compare* Am. Compl. ¶¶ 12–16, 83–89 (Count II – Trademark Infringement and Counterfeiting); *id.* ¶¶ 12–16, 93–99 (Count III – Federal Unfair Competition and False Designation of Origin); *id.* ¶¶ 104–08 (Count IV – Trademark Dilution); *and id.* ¶¶ 12–16, 114–20 (Count V – Common Law Unfair Competition)), *with Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (listing elements of trademark infringement claim (citations and footnote call number omitted)); *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647–48 (11th Cir. 2007) (stating *prima facie* test for false-designation-of-origin claim (citations omitted)); *Brain*

16

*Pharma, LLC v. Scalini*, 858 F. Supp. 2d 1349, 1356–57 (S.D. Fla. 2012) (discussing elements of trademark dilution claim (citations omitted)); *and Drew Estate Holding Co., LLC v. Fantasia Distrib., Inc.*, No. 11-21900-Civ, 2012 WL 234105, at *3 (S.D. Fla. Jan. 24, 2012) (providing legal standard for common-law-unfair-competition claim (citations omitted)).

Second, Easyfly's insistence that "no tort of infringement [] occurred within this state" improperly injects a merits inquiry into the Court's jurisdictional analysis. (Reply 4 (alteration added)). "The appropriate inquiry [for personal jurisdiction to attach] is whether the tort as alleged occurred in Florida, and not whether the alleged tort actually occurred." *Machtinger v. Inertial Airline Servs., Inc.*, 937 So. 2d 730, 734 (Fla. 3d DCA 2006) (alteration added; citation omitted); *see also Brennan v. Roman Catholic Diocese of Syracuse N.Y., Inc.*, 322 F. App'x 852, 855 (11th Cir. 2009) ("[A] motion to dismiss a tort claim for lack of personal jurisdiction under Florida's Long-Arm Statute does not require a full-scale inquiry into whether the defendant committed a tort. . . . [W]e can construe the facts in the light most favorable to the plaintiff and hold that the alleged claim satisfies Florida's Long-Arm Statute." (alterations added; citing *Future Tech.*, 218 F.3d at 1250)).

In short, Easyfly allegedly committed tortious acts in Florida that caused injury in Florida "by virtue of [its] website's accessibility in Florida[,]" *Lovelady*, 544 F.3d at 1283 (alterations added; footnote call number omitted); and Easyfly has sold airline tickets bearing the infringing trademarks to thousands of Florida customers, *see Mosseri*, 736 F.3d at 1354. (*See also* Am. Compl ¶¶ 29, 37–40; Resp. 5, 12). The requirements for specific jurisdiction are amply satisfied under Florida Statute section 48.193(1)(a)(2).

***Due Process***. Plaintiff must also show the exercise of jurisdiction over Easyfly would not offend due process. *See Madara*, 916 F.2d at 1514 (citations omitted). To comport with due

process, the nonresident defendant must be shown to have established "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 (11th Cir. 2009) (quotation marks and citations omitted).

In specific jurisdiction cases, the due process inquiry is whether: (1) "the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum"; (2) "the nonresident defendant 'purposefully availed' [it]self of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws"; and (3) "the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Mosseri*, 736 F.3d at 1355 (alteration added; citations omitted)). "The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (quotations marks and citation omitted).

*"Arising out of" or Relatedness*. "A fundamental element of the specific jurisdiction calculus is that plaintiff's claim must arise out of or relate to at least one of the defendant's contacts with the forum." *Id.* (alteration adopted; quotation marks and citations omitted). The first prong "focus[es] on the direct causal relationship between the defendant, the forum, and the litigation." *Sinclair & Wilde, Ltd. v. TWA Int'l, Inc.*, No. 20-20304-Civ, 2020 WL 1929262, at *3 (S.D. Fla. Apr. 21, 2020) (alteration added; quotation marks and citation omitted). The Court looks to the "affiliation between the forum and the underlying controversy, focusing on any activity or occurrence that took place in the forum State." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1314 (11th Cir. 2018) (alterations adopted; quotation marks and citations omitted). A "tort 'arises

out of or relates to' the defendant's activity in a state only if the activity is a 'but-for' cause of the tort." *Id.* (alterations adopted; citation omitted).

Plaintiff satisfies the first prong. Plaintiff's trademark claims arise out of or relate to at least one of Easyfly's contacts with Florida. Easyfly operates a website accessible in the forum that displays Plaintiff's trademarks and has made over 5,000 direct sales to Florida consumers using allegedly infringing trademarks. (*See* Am. Compl. ¶¶ 29, 37–40; Not. of Filing, Ex. E 2; Not. of Filing, Ex. F 2). Easyfly accepts payment from Florida customers following its use of the infringing trademarks on its Florida-accessible website. (*See* Not. of Filing, Ex. F. 2). These contacts are but-for causes of Plaintiff's injury in that had Easyfly not sold its services using infringing marks to Florida customers via a Florida-accessible website, Plaintiff's injury would not have occurred.

Accordingly, there is a direct causal relationship between at least one of Easyfly's contacts, Florida, and Plaintiff's trademark claims. *See Mosseri*, 736 F.3d at 1356 (finding the first prong satisfied where the defendant's ties to Florida included advertising, selling, and distributing the allegedly infringing goods into the state and accepting payment from Florida customers); *Elan Int'l, Inc. v. Sen Collection, Inc.*, No. 15-23620-Civ, 2017 WL 346622, at *5 (S.D. Fla. Jan. 24, 2017) (concluding a direct causal relationship existed between the defendant, Florida, and the plaintiff's trademark claims where the defendant's ties to this forum included selling and shipping infringing goods in Florida and accepting payment from Florida clients); *Evans*, 2016 WL 8787062, at *4 ("The Court is satisfied . . . the first prong of the three-pronged due process analysis is fulfilled because plaintiff's claims do arise out of or relate to at least one of its Florida contacts — the Florida-accessible website." (alteration added)); *Weingartner v. Draper James, LLC*, No. 15-81581-Civ, 2016 WL 8678544, at *5 (S.D. Fla. Oct. 4, 2016) (finding the first requirement was

"easily satisfied" where the record demonstrated that the defendant's contacts with Florida involved selling and distributing infringing goods in Florida).

*Purposeful Availment*.   In intentional tort cases, the Court may assess the purposeful availment prong under two independent inquiries: the effects test, *see Calder v. Jones*, 465 U.S. 783, 789 (1984), and the traditional minimum contacts test, *see Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779–80 (1984).   *See Mosseri*, 736 F.3d at 1356–57.   Easyfly insists Plaintiff cannot satisfy either test.   (*See* Mot. 17–19; Reply 8–10).   Because the Court finds Plaintiff has shown purposeful availment under the traditional minimum contacts test, it does not analyze the effects test.   *See Mosseri*, 736 F.3d at 1357 (footnote call number omitted).

Under the traditional minimum contacts test for purposeful availment, the Court assesses the nonresident defendant's contacts with the forum state and asks whether those contacts: "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed [it]self of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum."   *Id.* (alteration added; citation omitted).   In conducting this analysis, the Court "identif[ies] all contacts between a nonresident defendant and a forum state and ask[s] whether, individually or collectively, those contacts satisfy these criteria."   *Id.* (alterations added; citation omitted).

The "purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts[.]"   *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (alteration added; quotation marks and citations omitted).   "Mere operation of an interactive website alone does not give rise to purposeful availment anywhere the website can be accessed, but an accessible website, in conjunction with other contacts that directly give rise to the cause of action, may be sufficient."   *Rosenstock v. Sollars*,

No. 17-cv-81127, 2018 WL 8367072, at *3 (S.D. Fla. Jan. 24, 2018) (alterations adopted; quotation marks, citation, and emphasis omitted).

Easyfly purposefully availed itself of the Florida forum in such a way that it could reasonably anticipate being haled into a Florida court.  As noted by Plaintiff: (1) Easyfly had a publicly-accessible website from which customers could purchase Easyfly's services in the United States and Florida; (2) 49,412 Florida users[10] accessed Easyfly's website between May 2015 and May 2020; (3) Easyfly received over 6 billion Colombian pesos from U.S. consumers, 1.86 billion of which were paid by Florida consumers, between May 2015 and May 2020; (4) Easyfly made direct sales of 5,355 tickets to Florida consumers during the same five-year period; and (5) Easyfly's branded aircraft operated through Miami International Airport on July 30 and 31, 2020. (*See* Resp. 5–6, 16; *see also* Am. Compl. ¶¶ 29, 37–40; Not. of Filing, Ex. E 2; Not. of Filing, Ex. F 2; Not. of Suppl. Auth. . . . [ECF No. 96] 3–4).  Because of its Florida-specific sales, Florida-accessible website, and use of branded aircraft within Florida, Easyfly's collective contacts with Florida were not random, fortuitous, or attenuated.[11]  Succinctly stated, purposeful availment for due process is shown here.

Given the foregoing, it is rather remarkable that Easyfly nevertheless maintains its "creation and use of a Colombian website, displaying its duly registered Colombian trademarks,

---

[10] Easyfly contends "the overwhelming majority" of U.S. visits to its website were made by "bots or web crawlers[.]" (Mot. 8–9 (alteration added)).  Easyfly explains "the median duration of a visit to the website from Colombia is 3 minutes and 33 seconds, [and] the median duration of a visit from the United States is only 33 seconds[,]" concluding "[s]uch [] short duration is strongly indicative of visits from web crawlers or bots, not live users."  (*Id.* 9 (alterations added)).  Indeed.  Accepting these statistical pronouncements, it is curious that Easyfly conveniently ignores the median duration of a visit from *Florida* is 4 minutes and 44 seconds, which, according to Easyfly's reasoning, is "strongly indicative of visits from . . . live users." (*Id.* (alteration added); *see also* Not. of Filing, Ex. F 2).

[11] As discussed under prong one, Plaintiff's causes of action derive directly from these Easyfly contacts with Florida.  (*See generally* Am. Compl.).

21

entirely in Spanish, with no contact information for the United States, coupled with a lack of any promotion or advertisements in the United States, is [sic] woefully inadequate to support purposeful availment of Florida as a forum[.]"  (Mot. 18 (alteration added); *see also* Reply 8–9). The Court disagrees.

Even if Easyfly did not "direct[] any actions at Florida, or even the United States as a whole[,]" as it insists (Mot. 18 (alterations added)), Easyfly purposefully availed itself of the privileges of conducting business in Florida.  Easyfly clearly does business over the Internet in the United States and Florida; is willing to (and does) directly sell its services to Florida customers; has not limited its sales to any region or area; and accepts payment from Florida customers.  *See Kumbrink*, 2016 WL 5369334, at *3 (finding the defendant "purposefully availed itself of the privileges of doing business within Florida" because "[i]t operated a fully interactive website accessible in Florida and processed sales to Florida customers." (alteration added; citation omitted)); *Dohler S.A.*, 2017 WL 4621098, at *6 ("Sellers cannot expect to avail themselves of the benefits of the internet-created world market that they purposefully exploit and profit from without accepting the concomitant legal responsibilities that such an expanded market may bring with it." (quotation marks and citation omitted)); *see also Savvy Rest, Inc. v. Sleeping Organic, LLC*, No. 3:18-cv-00030, 2019 WL 1435838, at *5 (W.D. Va. Mar. 29, 2019) (stating even if the defendant "did not specifically target [the forum's] customers, it purposefully availed itself of the privilege of conducting business in the state" by using its website to sell products to customers in that forum (alteration added; citations omitted)).

In sum, Plaintiff satisfies the purposeful availment prong.  *See Mosseri*, 736 F.3d at 1357–58 (concluding the defendant purposefully availed himself of a Florida forum where he operated a Florida-accessible website, sold and distributed infringing products through the website to

Florida customers, and the causes of action derived directly from those contacts); *Atmos Nation, LLC v. All Fun Gifts Distrib., Inc.*, No. 16-60821-Civ, 2017 WL 5171174, at *5 (S.D. Fla. July 18, 2017) (finding the purposeful availment prong satisfied where the defendant sold products that infringed on the plaintiff's patent rights through its website); *Hartoy Inc. v. Thompson*, No. 02-80454-Civ, 2003 WL 21468079, at *5 (S.D. Fla. Jan. 29, 2003) (exercising personal jurisdiction over the defendant despite the fact its Florida sales only amounted to $325.00 because the defendant's website invited consumers to transact business and consumers availed themselves of that purchasing opportunity).

*Fair Play and Substantial Justice*.  Because Plaintiff has carried its burden of establishing the first two prongs, the Court considers whether Easyfly "ma[kes] a compelling case that the exercise of jurisdiction [] violate[s] traditional notions of fair play and substantial justice." *Waite*, 901 F.3d at 1313 (alterations added; quotation marks and citation omitted).  The "fair play and substantial justice factor is to be applied sparingly."  *KMG Int'l, BV*, 2019 WL 3343662, at *6 (quotation marks and citation omitted).

The Court looks to the following factors in evaluating whether exercising jurisdiction comports with fair play and substantial justice: the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of several states in advancing fundamental substantive social policies.  *See Burger King Corp.*, 471 U.S. at 476–77 (citations omitted).

Easyfly contends "exercising personal jurisdiction over [it] would not meet the minimum requirements of 'fair play and substantial justice.'"  (Mot. 18 (alteration added)).  The Court disagrees — exercising personal jurisdiction over Easyfly in this forum comports with fair play

CASE NO. 20-20062-CIV-ALTONAGA/Goodman

and substantial justice.  Easyfly's arguments fail to make a compelling case suggesting the contrary.

First, the burden of defending this lawsuit in Florida is not as substantial as Easyfly insists. Easyfly's representatives have traveled to the United States and this District on numerous occasions.  (*See* Resp. 6–8, 18–19).  Easyfly seeks business in the United States and Florida and has significant business dealings in Florida and, in particular, this District.  (*See id.*).  "[M]odern methods of transportation and communication have significantly reduced the burden on foreign nationals who are forced to litigate in the United States[.]"  *Maurer Rides USA, Inc. v. Beijing Shibaolai Amusement Equip. Co., Ltd.*, No. 6:10-cv-1718, 2014 WL 3687098, at *5 (M.D. Fla. July 24, 2014) (alterations added; quotation marks and citation omitted).  Easyfly has filed suit in this District, made court appearances, and even obtained a final judgment in its favor.  *See generally Black Lion Aviation Corp.*, No. 10-cv-60112; *see also Paris v. Levinson*, No. 8:19-cv-00423, 2019 WL 2995957, at *6 (M.D. Fla. July 9, 2019) (finding the defendants failed to demonstrate a substantial burden litigating in the chosen forum in part because one of the defendants had filed suit in that district and made court appearances).

Second, even though Plaintiff is not a Florida entity, Florida "has a legitimate interest in providing redress for persons inside or outside the state who are injured by tortious activity emanating from this state."  *Int'l Underwriters AG v. Triple I: Int'l Invs., Inc.*, No. 06-80966-Civ, 2007 WL 9701852, at *6 (S.D. Fla. May 30, 2007).

Third, "Plaintiff has a strong interest in obtaining convenient and effective relief in order to protect its company's reputation, resolve any consumer confusion, and maintain the value of its trademark[s]."  *Spectrum Image, Inc. v. Makozy*, No. 19-21702-Civ, 2019 WL 3997164, at *3 (S.D. Fla. Aug. 23, 2019) (alteration added; citation omitted).

24

Put simply, this is not "one of those rare cases in which minimum requirements inherent in the concept of fair play and substantial justice defeat the reasonableness of jurisdiction."[12] *U.S. S.E.C. v. Carrillo*, 115 F.3d 1540, 1547 (11th Cir. 1997) (alterations adopted; quotation marks and citation omitted).

***Decision***.  Plaintiff satisfies Florida's long-arm statute and exercising specific jurisdiction over Easyfly does not offend due process.  Defendants' Motion is denied as to Easyfly.

**B.  Avila**

Plaintiff contends Avila is subject to general jurisdiction, specific jurisdiction, and federal long-arm jurisdiction under Federal Rule of Civil Procedure 4(k)(2).  (*See* Resp. 10–21).  The Court disagrees, addressing each form of personal jurisdiction in turn.

***General Jurisdiction***.  General jurisdiction arises from a nonresident defendant's contacts with the forum that are unrelated to the cause of action being litigated.  *See Consol. Dev. Corp.*, 216 F.3d at 1292.  Under Florida's long-arm statute,[13] the Court may exercise general personal jurisdiction over any defendant "who is engaged in substantial and not isolated activity within this state, . . . whether or not the claim arises from that activity."  Fla. Stat. § 48.193(2) (alteration added).  "[T]he reach of section 48.193(2) extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment."  *Carmouche*, 789 F.3d at 1204 (alteration added; other alterations adopted; quotation marks and citation omitted).  So, the Court need only determine whether the exercise of general jurisdiction over Avila would exceed constitutional bounds.  *See id.* (citation omitted).

---

[12] Easyfly's discussion of the remaining factors and strings of citations are not enough to establish that jurisdiction over it offends notions of fair play and substantial justice.  (*See* Mot. 20–21; Reply 11).

[13] As mentioned, Florida's long-arm statute recognizes two kinds of personal jurisdiction over a nonresident defendant: specific jurisdiction and general jurisdiction.  *See* Fla. Stat. §§ 48.193(1)–(2).

Plaintiff alleges Avila is "subject to the personal jurisdiction of th[e] Court" because he has "travelled numerous times to the U.S., [] maintain[s] [a] bank account[] in Florida[,] and [] owns property in South Florida." (Am. Compl. ¶ 10 (alterations added); *see also id.* ¶¶ 34–35). Avila insists "such unsubstantial contacts are insufficient for a finding of general jurisdiction."[14] (Mot. 15). The Court agrees — general jurisdiction over Avila is improper.

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Daimler AG*, 571 U.S. at 137 (alteration added; citations omitted). "Beyond [being domiciled in the forum], the Supreme Court has provided two other instances in which the exercise of general jurisdiction over an individual is proper: where the individual consents to the forum's jurisdiction, and where the individual is present within the forum when served with process." *McCullough v. Royal Caribbean Cruises, Ltd.*, 268 F. Supp. 3d 1336, 1350 (S.D. Fla. 2017) (alteration added; citations omitted).

Avila is a citizen and resident of Colombia. (*See* Am. Compl. ¶ 7; Avila Decl. ¶ 5). Avila was not served in and did not consent to jurisdiction in Florida. (*See generally* Not. of Filing Proof of Delivery Receipt Reg. Def. Avila [ECF No. 50], Ex. A [ECF No. 50-1]). General jurisdiction over Avila is thus lacking. *See Argos Glob. Partner Servs., LLC v. Ciuchini*, 446 F. Supp. 3d 1073, 1086 (S.D. Fla. 2020) (concluding general personal jurisdiction over the defendant was lacking because he (1) was a citizen of Brazil and Italy; (2) was a resident of France; and (3) was neither served in nor consented to jurisdiction in Florida); *Mar. Exec., LLC v. Larson Elecs., LLC*, No. 17-cv-60323, 2018 WL 2938376, at *3 (S.D. Fla. June 11, 2018) (finding no general jurisdiction

---

[14] In its Response, Plaintiff raises one argument in support of exercising general jurisdiction over Avila: "Florida's long-arm statute authorizes jurisdiction over . . . Avila." (Resp. 15 (alteration added; footnote call number omitted)). Defendants provide an apt observation: "[I]n the entire general jurisdiction argument, . . . Avila is not mentioned at all except for the final sentence where Plaintiff states in conclusive fashion . . . that Florida's long-arm statute authorizes jurisdiction over . . . Avila." (Reply 7–8 (alterations added; quotation marks omitted)).

where the defendant was "a resident of Texas, [and] [] was not served in and did not consent to jurisdiction in Florida." (alterations added)); *Dohler S.A.*, 2017 WL 4621098, at *4 (stating general jurisdiction was improper because the defendants were "both residents of North Carolina, [and] were not served in and did not consent to jurisdiction in Florida." (alteration added)).

***Specific Jurisdiction***.  Plaintiff alternatively states Avila has submitted himself to Florida's specific jurisdiction by committing tortious acts within the state.  (*See* Resp. 10–13; *see also* Am. Compl. ¶¶ 7, 26–27, 29, 34, 37–40).

The relevant allegations are: (1) Avila is Easyfly's president controlling Easyfly's "actions and/or making some of the most critical decisions"; (2) Avila "principally controls the actions of Easyfly in relation to this Complaint and is instrumental in the operations of Easyfly"; (3) "Easyfly sells tickets through various means, including its website which is accessible from anywhere in the world[,]" including Florida; (4) Easyfly uses the infringing EASYFLY trademarks on its website; (5) the United States "constitutes as [sic] country of origin for almost fifty percent of all clicks to Easyfly's website and accounts for the second largest source of income from online purchases with significant sales purportedly coming from the United States, including Florida"; and (6) the "Easyfly airline is benefitting from the infringing activities" of Kayak, Kiwi, and Skyscanner.  (Am. Compl. ¶¶ 7, 27, 29, 37–40, 53 (alteration added)).  Plaintiff contends "as a result of the[se] contacts and conduct by [Defendants], the Court may assert specific jurisdiction over" Avila under section 48.193(1)(a)(2).  (Resp. 13 (alterations added)).

Avila responds to Plaintiff's allegations with his declaration and deposition testimony.  (*See* Reply 5).  Avila states he is "not responsible for the marketing activities of [Easyfly,]" as "[t]he day-to-day marketing activities . . . are carried out by [Easyfly's] marketing and sales teams of which [he] [is] not a member."  (Avila Decl. ¶ 25 (alterations added)).  Avila declares Easyfly's

"marketing and sales teams . . . are responsible for [its] website, social media presence and campaigns, preparation and dissemination of marketing campaigns and materials, [] corporate image, and [] advertisements." (*Id.* ¶ 26 (alterations added)). Avila reports "to a board of directors which exercises independent judgment over the activities of the company, including its marketing activities." (*Id.* ¶ 27). Additionally, Avila testified he has not "personally reviewed . . . the company['s] website[.]" (Reply, Ex. N, Avila Dep. Tr. [ECF No. 95-1] 35:17–19 (alterations added)). Avila explained the "business director . . . [and] systems officer of technology" are "in charge of [Easyfly's] website[.]" (*Id.* 35:20–23 (alterations added)).

Citing his averments and testimony, Avila insists the record evidence shows he "is not involved . . . with the website, its design or implementation, or the use of any trademarks therein." (Reply 5 (alteration added)). On the present record, the Court agrees.

Plaintiff does not offer any evidence to rebut Avila's submissions.[15] Instead, Plaintiff cites to *Easyfly*'s sales to U.S. and Florida customers through use of *Easyfly*'s website to support the position specific jurisdiction exists over *Avila*. (*See* Resp. 12 (stating "the issue is whether Defendant Easyfly's [— not Avila's —] tortious acts caused injury in Florida." (alteration added))). Plaintiff's approach is problematic. Plaintiff cites no authority supporting the proposition Easyfly's sales to Florida consumers through Easyfly's website can form the relationship between Avila, Plaintiff, and this case; especially where, as here, Avila's submissions sever any link between Avila and the trademark infringement at issue. Avila stated under oath he neither directs, controls, or is responsible for Easyfly's website; its website's use of Plaintiff's

---

[15] Plaintiff maintains *Defendants*' "statements and documents . . . contradict *their* assertions and, in fact, support Plaintiff's well-pled allegations." (Resp. 13 (alteration and emphasis added)). This argument fails for two reasons. First, as Avila correctly notes, Plaintiff "consistently couples both . . . Defendants as if they were one entity." (Reply 5 (alteration added)). Second, while *Easyfly*'s Google Analytics Reports contradict Easyfly's position (*see* n.7, *supra*), those Reports do not contradict Avila's submissions and do not provide evidence for the exercise of jurisdiction over Avila.

trademarks; or its marketing and sales activities — the tortious conduct supporting Plaintiff's trademark claims.  (*See* Avila Decl. ¶¶ 25–27).  It is Easyfly, the corporation, not Avila, the individual, that allegedly chose to infringe on Plaintiff's trademarks by offering and selling Easyfly's services to Florida consumers through a Florida-accessible website.  Plaintiff provides no evidentiary response to show Avila "principally controls the actions of Easyfly in relation to this Complaint," as Plaintiff alleges.  (Am. Compl. ¶ 27).

Because Plaintiff fails to provide any evidence to counter *Avila*'s submissions, Plaintiff has not met its burden of sufficiently alleging section 48.193(1)(a)(2) is satisfied under the theory *Easyfly*'s Florida-accessible website and ticket sales in Florida give rise to specific jurisdiction over *Avila*.  *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1282–83 (11th Cir. 2009) (finding no personal jurisdiction over the defendant where the plaintiff failed to provide competent evidence rebutting the defendant's affidavit; stating "[a]t the threshold, . . . we cannot consider the allegations about [the defendant's] conduct in Florida because [the defendant's] affidavit, which [the plaintiff] has failed to rebut with competent evidence, specifically denies those allegations." (alterations added)); *Turizo v. Jiffy Lube Int'l, Inc.*, No. 19-cv-61140, 2019 WL 4737696, at *5 (S.D. Fla. Sept. 27, 2019) (concluding the plaintiff failed to satisfy the long-arm statute because the plaintiff provided no evidentiary response to the defendant's rebuttal evidence); *In re Banco Santander Sec.-Optimal Litig.*, 732 F. Supp. 2d 1305, 1313 (S.D. Fla. 2010) (stating the plaintiffs' "failure to rebut, with some admissible evidence, the statements in the various [d]efendants' affidavits . . . fatally undermines the [p]laintiffs' case for personal jurisdiction" (alterations added; *aff'd sub nom. Inversiones Mar Octava Limitada v. Banco Santander S.A.*, 439 F. App'x 840 (11th Cir. 2011))).

Even if Plaintiff satisfies the long-arm statute, the Court finds exercising specific jurisdiction over Avila offends due process. As outlined, the first due process prong requires that Plaintiff, at a minimum, demonstrate Avila had "some contact with the forum state and that the contact was a but-for cause of the alleged tort." *PG Creative Inc.*, 2019 WL 5684219, at *4 (quotation marks and citations omitted). Said differently, "the alleged tort must arise out of contacts that the 'defendant himself' creates with the forum." *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014); other citation omitted)).

Plaintiff does not directly address the relatedness prong with respect to Avila, focusing instead on Easyfly's and Avila's collective contacts with Florida and the *Calder* effects test in the purposeful availment prong. (*See* Resp. 16–17). In any event, the alleged contacts between Plaintiff and Avila are not but-for causes of Plaintiff's alleged injury. Avila's alleged contacts with this forum include: (1) a vacation residence in Miami-Dade County; (2) business trips to Florida "to shop for airplane parts . . . [and] visits to [Avions de Transport Regional GIE's] training facility"; (3) "pleasure trips" to Florida "at least once or twice a year"; (4) "a personal bank account in Miami, Florida . . . in which [Avila] maintains both a checking and savings account"; and (5) "signing control over Easyfly's business bank account . . . in Miami, Florida." (Am. Compl. ¶¶ 34–35 (alterations added)). Plaintiff's alleged injury — Easyfly's use of infringing marks on its Florida-accessible website and profiting from that use by selling services to Florida customers — would have occurred regardless of Avila's contacts with Florida. In other words, Avila's pleasure trips, business trips unrelated to marketing and Easyfly's website, personal bank account, and signing control "have nothing to do with the torts [*Easyfly*] allegedly committed." *Waite*, 901 F.3d at 1315 (alteration and emphasis added).

In short, neither Florida's long-arm statute nor the U.S. Constitution authorizes the Court to exercise specific jurisdiction over Avila.

**_Federal Long-Arm Jurisdiction_**.  The final, alternative basis Plaintiff asserts for exercising jurisdiction over Avila — Rule 4(k)(2) (*see* Resp. 20–21) — is similarly unavailing.[16]

Rule 4(k)(2) provides that serving a summons for a claim arising under federal law establishes jurisdiction over a defendant if: "(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2).  It "operates as a 'national long-arm statute' which 'permits a court to aggregate a foreign defendant's nationwide contacts' for jurisdictional purposes when the defendant does not show that he is subject to the personal jurisdiction of any individual U.S. state, provided that the Plaintiff's claims[] 'arise under federal law' and that the exercise of jurisdiction is consistent with due process." *Weinstock v. Islamic Rep. of Iran*, No. 17-23272-Civ, 2019 WL 1993778, at *2 (S.D. Fla. May 6, 2019) (alteration added; quoting *Fraser v. Smith*, 594 F.3d 842, 848–49 (11th Cir. 2010)).

The "[d]ue process analysis under Rule 4(k)(2) utilizes the same specific jurisdiction factors as analysis under Rule 4(k)(1)(A), including whether (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to the defendant's activities with the forum, and (3) assertion of personal jurisdiction is reasonable and fair." *Saint-Gobain Tech. Fabrics Am., Inc. v. Checkmate Geosynthetics*, Inc., No. 6:09-cv-557, 2010 WL 11507686, at *6 (M.D. Fla. Feb. 5, 2010) (alteration added; quotation marks and citation omitted); *see also GolTV, Inc. v. Fox Sports Latin Am. Ltd.*, 277 F. Supp. 3d 1301, 1318 (S.D. Fla.

---

[16] Plaintiff does not assert jurisdiction under the federal long-arm statute in its Amended Complaint. (*See generally* Am. Compl.); *see also Alston v. www.calculator.com*, No. 20-cv-23013, 2020 WL 4451008, at *6 n.2 (S.D. Fla. Aug. 3, 2020) (rejecting the plaintiff's Rule 4(k)(2) argument in part because the complaint did not assert federal long-arm jurisdiction as a basis for personal jurisdiction).

2017) (laying out the due process test under Rule 4(k)(2) (citations omitted)).  In cases where Rule 4(k) is invoked, the relevant forum for the minimum contacts analysis is the United States as a whole.  *See Oldfield*, 558 F.3d at 1220 (citation omitted).

Quite simply, after looking at the United States as a whole as the applicable forum for minimum contacts, the Court finds the exercise of jurisdiction over Avila still offends due process.[17]  The only additional contact Plaintiff identifies as to Avila is "the business discussed and conducted on a monthly basis with [Easyfly's] former shareholder and founder of the company based in New York[.]"  (Resp. 21 (alterations added); *see also* Am. Compl. ¶ 34).  Plaintiff, however, does not address whether this additional contact is related to or gave rise to its causes of action against *Avila*.[18]  (*See* Resp. 20–21).  Avila's ordinary business activities in New York, as alleged by Plaintiff, are too attenuated to relate to Plaintiff's claims in this case, especially given Avila's unrebutted evidentiary submissions supporting his position he is not (and was not) involved in Easyfly's alleged tortious conduct.  (*See* Avila Decl. ¶¶ 25–27).  Plaintiff's vague contention Avila "discussed and conducted" business in New York does not dictate a different outcome.  (Resp. 21).

In sum, this case is not one of those "rare occurrence[s] when a court invokes jurisdiction under [Rule 4(k)(2)]."  *Thompson v. Carnival Corp.*, 174 F. Supp. 3d 1327, 1337 (S.D. Fla. 2016) (alterations added).

---

[17] Nearly all of Plaintiff's claims asserted against Avila arise under federal law.  (*See generally* Am. Compl.).  The Court thus focuses on whether exercising jurisdiction over the federal claims is consistent with due process.

[18] Plaintiff's Rule 4(k)(2) argument is directed at both Defendants, not Avila, and relies mostly — if not entirely — on Easyfly's contacts with the United States, not Avila's.  (*See* Resp. 20–21; *see id.* 21 ("*Defendants* cannot escape justice by spreading *their* contacts around the state where cumulatively *they* provide jurisdiction in the United States." (emphasis added))).

CASE NO. 20-20062-CIV-ALTONAGA/Goodman

*Decision*.  Plaintiff fails to show that general, specific, or federal long-arm jurisdiction exists over Avila.  Defendants' Motion is granted with respect to Avila.

## IV.    CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Defendants, Empresa Aerea de Servicios y Facilitacion Logistica Integral, S.A. and Alfonso Avila Velandia's Motion to Dismiss Plaintiff's Amended Complaint for Lack of Personal Jurisdiction **[ECF No. 85]** is **GRANTED in part** and **DENIED in part**.  Plaintiff's claims against Alfonso Avila Velandia are **DISMISSED** without prejudice for lack of jurisdiction.  The Clerk is directed to **TERMINATE** Defendant, Alfonso Avila Velandia.

**DONE AND ORDERED** in Miami, Florida, this 11th day of September, 2020.

_____

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record